**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MICHAEL GAINES,

        *Plaintiff*,

*v.*

CIVIL ACTION NO. 1:16-cv-12793
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 15, 18)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Gaines is not disabled. Accordingly, **IT IS RECOMMENDED** that Gaines's Motion for Summary Judgment, (Doc. 15), be **DENIED**, the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael Gaines's ("Gaines") claim for a period of disability and Supplemental Security Income Benefits ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq.*

(Doc. 4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 18).

Gaines previously filed an application for SSI and was found disabled for a closed period from August 17, 2010 through July 3, 2013. (Tr. 71-84). Because he did not appeal the decision, it became final and binding on all parties. (Tr. 17).

On November 13, 2013, Gaines filed a renewed application for SSI, alleging a disability onset date in April 2010. (Tr. 85). The Commissioner denied his claim. (Tr. 85-97). Gaines then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on April 27, 2015 before ALJ Michael R. Dunn. (Tr. 33-66). At the hearing, Gaines—represented by his attorney—testified alongside Vocational Expert ("VE") Stephanie Lorey. (*Id.*). The ALJ's written decision, issued June 24, 2015, found Gaines not disabled. (Tr. 17-29). On June 16, 2016, the Appeals Council denied review, (Tr. 1-6), and Gaines filed for judicial review of that final decision on July 29, 2016. (Doc. 1).

## B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

## C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Gaines not disabled under the Act. (Tr. 17-29). At Step One, the ALJ found that Gaines had not engaged in substantial gainful activity since November 13, 2013, his date last insured. (Tr. 19). At Step Two, the ALJ concluded that the following impairments qualified as severe: status post gunshot wounds; traumatic brain injury with organic brain disorder; attention deficit disorder; depressive disorder; post-traumatic stress disorder; generalized anxiety disorder; polysubstance abuse disorder; chronic headaches with temporomandibular joint syndrome; left shoulder tendinosis; and peripheral neuropathy. (Tr. 19-20). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 20-22). Thereafter, the ALJ found that Gaines had the residual functional capacity ("RFC") to perform light work, except:

> the claimant cannot perform overhead reaching or lifting with the left upper
> extremity. The claimant must avoid all exposure to unprotected heights,
> hazardous machinery, and operating a motor vehicle. The claimant is limited

to work that consists of simple, routine, and repetitive unskilled tasks performed at Special Vocational Preparation (SVP) 1 or 2 as defined in the Dictionary of Occupational Titles (DOT), free of fast-paced production requirements and with few, if any, workplace changes. The claimant can perform no more than simple, work-related decisions. The claimant can occasionally interact with supervisors and coworkers. The claimant can never interact with the general public.

(Tr. 22). At Step Four, the ALJ found Gaines incapable of performing his past relevant work as a nurse aide, stocker, or home attendant. (Tr. 27). But proceeding to Step Five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . ." (Tr. 28).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Gaines's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### i.    Function Report

On January 10, 2014, Tatiana Lang filled out a Function Report on Gaines's behalf, which appears in the record. (Tr. 190-97). He described his conditions as "[h]eadaches and numbness of the hands." (Tr. 190). In a typical day, he watched television and sat "around [the] house." (Tr. 191). Before his alleged onset date, Gaines indicated that he would "work, play sports and do things with [his] children" but his conditions since interfered with that. (*Id.*). Sometimes his headaches woke him from his sleep. His activities of daily

living, however, remained largely unaffected; he merely had to "take [his] time" while dressing and bathing. (*Id.*).

"Sometimes," Gaines indicated, he needed reminders to take care of personal needs, grooming, and medicine. (Tr. 192). He "[n]ever" prepared meals because he could not "cook for [him]self." (*Id.*). Nor did he do house or yard work because "of the headaches and numbness of my hand." (Tr. 193). When he felt well enough, though, he would go outside "every chance [he] g[o]t." (*Id.*). Because he could not drive, he rode in the car when he needed to travel, and he shopped when possible for himself and his daughters. (*Id.*). He remained able to pay bills,[1] count change, handle a savings account, and use a checkbook or money orders. (*Id.*). His hobbies used to include "playing sports," but now he just watched television and read for fun each day. (Tr. 194).

Gaines also wrote about spending time with others "every other day [and] weekend." (*Id.*). Indeed, he visited his sister's house and had lunch with others on a regular basis. (*Id.*). Nevertheless, he needed someone to accompany him. (*Id.*).

When prompted, Gaines checked boxes next to abilities now difficult for him, namely: lifting, squatting, bending, stair climbing, memory, completing tasks, understanding, following instructions, using hands, and getting along with others. (Tr. 195). He could walk half a block before needing five-minutes' rest, and he could neither

---

[1] Gaines marked both "Yes" and "No" at this juncture in his Function Report. (Tr. 193). However, the next page indicates that his ability to handle money since his alleged onset date had not changed. (Tr. 194). Thus, I read his Function Report as confessing an ability to pay bills.

pay attention for long, nor follow written instructions well without hearing them "over and over." (*Id.*).

### ii. Gaines's Testimony at the Administrative Hearing

At the hearing, Gaines's attorney opened his testimony by acknowledging the prior decision in September 2013 that found him disabled "from his amended onset date of August 17th, 2010 through July 3rd, 2013 . . . a closed period of benefits." (Tr. 38). "[A]dditional psychological conditions that have been diagnosed since that time" included "generalized anxiety disorder with panic and mixed personality disorder," and additional physical conditions included "problems in both his shoulders, especially the left . . . rotator cuff syndrome . . . [and] problems in the right forearm and right wrist, . . ." (*Id.*). After establishing these allegations, the ALJ proceeded to question Gaines directly.

Gaines had four daughters at the time of the hearing. (Tr. 40). Another daughter had passed away. (*Id.*). He noted he had no source of income aside from food stamps. (Tr. 41). He clarified that he did not drive. (*Id.*). He recounted that he got his certification as a nursing assistant in 2009, and last worked that same year as a certified nurse's assistant at "Hedge's Manor." (Tr. 43). He also worked part time as a direct care aide for a company that sent him to help specific individuals. (*Id.*).

With respect to his medical treatment history, Gaines indicated that he treated with Catholic Charities regularly, and went to see his therapist and doctor on a bimonthly basis. (*Id.*). He received treatment for his "primary care" at Flushing Road Internal Medicine about once a month. Numerous records, however, showed frequent visits to the emergency room for headaches and TMJ. (Tr. 44). He described problems in his left shoulder from a

fall in 2002, and looked forward to a surgery the coming July. (Tr. 44-45). He described the pain in his jaw and from headaches, recounting how he often wakes up from sleep due to the pain. (Tr. 45). He had no habit of drinking or smoking, and despite a history of cocaine use, had not used in "a couple years . . . ." (Tr. 48). He relied on his mother and sister to remind him about medications, but at times his social anxiety made being around others difficult. "I don't try to be around nobody because I'll be . . . kind of afraid about [what might happen]." (Tr. 49). He suffered from "waking intrusive memories," both while asleep and awake, where he would "wake up and . . . things will be so different; people look so different. I think people trying to do something to me; they looking at me." (Tr. 50). His paranoia prevented him from leaving his home at night. (Tr. 56).

Gaines then spoke a little about his activities of daily living. He was able to make simple meals such as a sandwich. (Tr. 51). He also enjoyed marshmallows quite a bit. (Tr. 51-52). Though largely without hobbies, Gaines said he watched basketball because he "used to play . . . . . [and] loved it" even though he could not play anymore because it was "really difficult." (Tr. 52). Headache pain still made anything difficult to do until the medication kicked in, which sometimes took up to forty minutes. (Tr. 53). This began, he suggested, when he was shot in the head years before: "It's like all on my right side, it'd just be like – it all goes like all the way around to my other side. It'd just be like literally like somebody hit me on my mouth with something, and I can't open it. Like I had like . . . mild seizures or something because . . . I can't open my mouth." (Tr. 53-54). And the medication did not always work, sometimes making him nauseous, other times blurring his vision. (Tr. 54-55).

### iii.   The VE's Testimony at the Administrative Hearing

The VE began her testimony by describing Gaines's past work: 'nurse aide' qualified as semi-skilled with an SVP of four; 'stacker' qualified as unskilled and medium exertion; 'phone attendant' qualified as medium exertion, semi-skilled, and with an SVP of two. (Tr. 59). Thereafter, the ALJ presented the first hypothetical to the VE: "[A]ssume that our worker is capable of work at all exertional levels" except he "must avoid exposure to unprotected heights, must avoid exposure to hazardous machinery, should not operate a motor vehicle as part of his employment; the work should be limited to simple, routine, or repetitive unskilled tasks performed at SVP one or two as defined in the Dictionary of Occupational Titles, free of fast-paced production requirements with few, if any, workplace changes, nothing more than simple work-related decisions should be required. It should be no more than occasional interaction with supervisors, coworkers and the public. Now, within those parameters, could such a worker perform any of the claimant's past work as you've described it?" (Tr. 61). The VE denied that such an individual could do any of Gaines's past work. (*Id.*). Other jobs, however, existed for such an individual: "[m]arker"—with 225,000 national job availabilities; "[i]nspector"—with 130,000 national job availabilities; and "copy machine operator"—with 28,000 national job availabilities. (Tr. 61-62). The VE later clarified that each of these jobs was a "light" job. (Tr. 62).

The ALJ then asked the VE "to carry forward the limitations from the prior hypothetical" and "reduce the exertional level to medium." (*Id.*). The VE confirmed that

the same jobs would be available. (*Id.*). The ALJ added that the worker, "because of the distracting nature of pain, emotional factors that would cause distraction from work activity, the need to occasionally take breaks in addition to regularly scheduled breaks, would predictably be off task 25 percent of the day in addition to regularly scheduled breaks; would that preclude full-time, competitive employment?" (Tr. 63). The VE noted that it would. (*Id.*). And the VE provided the same answer for a worker predicted to "consistently miss three days per month, . . ." (*Id.*). The VE grounded her testimony in her "experience as a vocational expert." (*Id.*).

In response to questions from Gaines's attorney, the VE indicated that the most a person could be off task was about "10 percent of the time." (Tr. 64). Nor could a person be absent more than once a month. (*Id.*).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both  "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including

symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2,

1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.

*See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR

96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

In the Sixth Circuit, a prior decision by the Commissioner can preclude litigation in subsequent cases.

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 1998 WL 283902, at *3 (acquiescing to *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). The applicable regulations explicitly invoke *res judicata*: An ALJ can dismiss a hearing where "res judicata applied in that we have a previous [final] determination or decision under this subpart about your rights." 20 C.F.R. §§ 404.957, 416.1457. Ultimately, the *res judicata* effect of past ALJ decisions is actually a form of collateral estoppel precluding reconsideration of discrete factual findings and issues. *See Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005) ("This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review.").

In *Drummond*, the Sixth Circuit held that the first ALJ's RFC applied to a subsequent period unless the circumstances had changed. 126 F.3d at 843. The court later reaffirmed this principle in *Haun v. Commissioner of Social Security*, rejecting the argument that *Drummond* allowed a second ALJ to examine *de novo* the unadjudicated period following the first denial. 107 F. App'x 462, 464 (6th Cir. 2004). The Commissioner's internal guide explains the different issues and factual findings precluded by *res judicata* under *Drummond*. *See generally Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual*, § I-5-4-62, 1999 WL 33615029, at *8-9 (Dec. 30, 1999). These

include the RFC and various other findings along the sequential evaluation process, such as "whether a claimant's work activity constitutes substantial gainful activity," whether she has a severe impairment or combination of impairments, or whether she meets or equals a listing. *Id.*

Tension exists in the case law addressing whether *res judicata* applies to pre-hearing determinations. *Compare Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir. 1978) (noting that *res judicata* can apply even where "no oral hearing was held before an ALJ on the prior application"), *with Asbury v. Comm'r of Soc. Sec.*, 83 F. App'x 682, 684 n.1 (6th Cir. 2003) ("We recognize that the applicability of the *Drummond* analysis is not clear with respect to administrative decisions that do not follow 'trial-type' hearings."). This heretofore unresolved issue can generate difficult questions, and courts typically will not address it unless raised and argued by the parties to a case. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 13-CV-14797, 2015 WL 730094, at *3 n.2 (E.D. Mich. Feb. 19, 2015) (declining to address the doctrine's applicability to an initial determination in light of "the tensions in the case law and the parties' failure to raise the argument").

A similarly obscure issue arises where a claimant's application follows a prior determination which found a closed period of disability. "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Eaton v. Comm'r of Soc. Sec.*, No. 1:10-cv-714, 2011 WL 2601503, at *3 (W.D. Mich. June 6, 2011) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987)) (internal quotation marks omitted). To find a closed period, the ALJ must first find a claimant disabled and

thereafter "find a medical improvement in the claimant's condition to end her benefits"—

and both findings must be supported by substantial evidence. *Brown v. Comm'r of Soc.*

*Sec.*, No. 1:13-CV-851, 2015 WL 502143, at *5 (S.D. Ohio Feb. 5, 2015) (citing *Niemasz*

*v. Barnhart*, 155 F. App'x 836, 839-40 (6th Cir. 2005)). *See generally* 42 U.S.C. §

423(f)(1)(A) (stating that a "recipient of benefits . . . may be determined not to be entitled

to such benefits" where substantial evidence demonstrates that "there has been any medical

improvement in the individual's impairment or combination of impairments (other than

medical improvement which is not related to the individual's ability to work, . . ."). In a

renewed application, *res judicata* binds the Commissioner as to the claimant's disability

*during* the closed period, as well as her non-disability *after and before* the closed period.

*See, e.g.*, *Burlew v. Astrue*, No. CIV.A. 2008-234 (WOB), 2009 WL 197543, at *2 (E.D.

Ky. Jan. 26, 2009) (noting that the ALJ's 2002 determination that claimant was entitled to

benefits only from 1994 to 1998 stood "as the final decision of the Commissioner. . . up to

the date of the decision"). This effect is implicit in the finding of a closed period, regardless

whether the ALJ precisely indicates as much. *E.g.*, *McGregor v. Comm'r of Soc. Sec.*, No.

CIV.A. 11-15507, 2012 WL 6949220, at *7 (E.D. Mich. Dec. 10, 2012) (recognizing that

a finding of non-disability capping a closed period of disability "is inherent in a closed

period of disability scenario"); *accord Vicknair v. Astrue*, No. CIV.A. 1:08CV052-C, 2009

WL 2949764, at *5 (N.D. Tex. Sept. 15, 2009) ("The determination of a closed period of

disability entails both a disability and a termination, . . ."); *cf. Evers v. Astrue*, No. 3:12-

CV-118, 2013 WL 1305627, at *12 (E.D. Tenn. Jan. 2, 2013), *report and recommendation*

*adopted*, No. 3:12-CV-118, 2013 WL 1301777 (E.D. Tenn. Mar. 28, 2013) ("The Court

has not found, nor has it been directed to any law, that would require the ALJ to use any specific language or make specific findings relating to the closed period of disability.").

Evidence of "changed circumstances" after the prior decision allows the ALJ to make new findings concerning the unadjudicated period without disturbing the earlier decision. *See Bailey ex rel. Bailey v. Astrue*, No. 10-262, 2011 WL 4478943, at *3 (E.D. Ky. Sept. 26, 2011) (citing *Drummond*, 126 F.3d at 842-43). In other words, even though the first ALJ did not make any findings concerning later periods, her decision still applies to those periods absent the requisite proof of changed circumstances. Thus, as applied in this Circuit, SSAR 98-4(6) and *Drummond* essentially create a presumption that the facts found in a prior ruling remain true in a subsequent unadjudicated period unless "there is new and material evidence" on the finding.

To overcome this presumption, the Sixth Circuit has consistently anchored the analysis on the comparison between the "circumstances existing at the time of the prior decision and the circumstances existing at the time of review . . . ." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). The court explained in a case predating *Drummond*: "[W]hen a plaintiff previously has been adjudicated not disabled, she must show that her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-1233 (6th Cir. 1993). The ALJ must scan the medical evidence "with an eye toward finding some change from the previous ALJ decision . . . ." *Blackburn v. Comm'r of Soc. Sec.*, No. 4:1-cv-58, 2012 WL 6764068, at *5 (E.D. Tenn. Nov. 14, 2012), *Report & Recommendation adopted by* 2013 WL 53980, at *1 (Jan. 2, 2013). That is, the evidence

must not only be new and material, but also must show deterioration. *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 U.S. Dist. LEXIS 115925, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011), *Report & Recommendation adopted by* 2011 U.S. Dist. LEXIS 110609, 2011 WL 4502955, at *4 (Sept. 28, 2011). In *Drogowski*, for example, the court rejected the plaintiff's argument that a report met this test simply because it was not before the first ALJ. *See* 2011 WL 4502988, at *2, *8-9. The relevant change in circumstances is not a change in the availability of evidence but a change in the plaintiff's condition.

I note, as well, that an equally important corollary to this principle dictates that an ALJ may not find *improvement* in a claimant's condition absent new and material evidence thereof following an already adjudicated period. *See, e.g.*, *Albanna v. Comm'r of Soc. Sec.*, 2016 WL 7238925, at *15 (E.D. Mich. Nov. 22, 2016) (Morris, M.J.) (finding an ALJ erred by calling the claimant's illiteracy into question based on "thinly substantiated doubts" where a prior decision found him illiterate); *see also Drummond*, 126 F.3d at 842-43; *Hamblin v. Apfel*, 7 F. App'x 449, 451 (6th Cir. 2001). This standard becomes particularly—albeit not exclusively—salient in termination-of-benefits cases, "in which the Commissioner reviews (and decides whether to terminate) the continued payment of benefits" following the prior grant of "a claimant's application for benefits . . . under a continuing disability." *Campbell v. Comm'r of Soc. Sec.*, No. 10-13098, 2011 WL 2160460, at *4 n.4 (E.D. Mich. June 1, 2011) (quoting *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002)).

### G.    Analysis

As an initial matter, the ALJ regarded the Commissioner's prior determination as to Gaines's disability finding and indicated that "[t]he prior finding concerning [Gaines's] residual functional capacity is binding absent evidence of an improvement or change in condition since the prior hearing," and neither of the parties argue that the ALJ applied an improper standard under *Drummond* and the relevant regulations. (Tr. 22). As such, *res judicata* dictates that Gaines was presumed not disabled after the conclusion of his closed-period benefits award. *E.g.*, *McGregor*, 2012 WL 6949220, at \*7.

Gaines puts forth two general arguments in his brief: (1) the ALJ failed to properly apply 20 C.F.R. § 416.927 and SSR 96-6p in evaluating the opinion of his psychologist, Dr. Karen Marshall, and (2) the ALJ failed to properly evaluate Gaines's credibility. I consider each argument in turn.

### 1.    The ALJ Properly Evaluated Dr. Marshall's Opinion

Gaines first notes that "the ALJ only assigned weight to the social functioning portion of Dr. Marshall's opinion." (Doc. 15 at ID 631). Acknowledging that Dr. Marshall was not a treating source, Gaines nonetheless suggests that "[i]t surely is not enough to just assign weight to one of the many components of an opinion, especially when the rest of the opinion supports a finding of disability." (Doc. 15 at ID 631-32). Specifically, Gaines points out that the ALJ never expressly addressed a number of Dr. Marshall's findings, including "that [Gaines] may have difficulty staying focused on tasks due to intrusive thoughts and that [he] appeared withdrawn. . . . [that he] suffers from auditory hallucinations with commands. . . . [And that he] was also assessed a guarded prognosis."

(Doc. 15 at ID 632) (citing (Tr. 253-54)). In response, the Commissioner supposes that "[t]he problem with [Gaines's] argument is he never identifies where Dr. Marshall assessed specific work-related limitations that the ALJ did not account for." (Doc. 18 at ID 650).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating source's* opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

In taking issue with the ALJ's treatment of Dr. Marshall's opinion, Gaines does not indicate *how* those items not assigned specific weight by the ALJ should have proven disability, *i.e.*, what additional limitations should have colored the RFC. "Plaintiff has the

burden of demonstrating that his RFC is insufficiently restrictive." *Thomas v. Comm'r of Soc. Sec.*, No. 15-13291, 2017 WL 927623, at *7 (E.D. Mich. Feb. 17, 2017), *report and recommendation adopted*, No. 15-CV-13291, 2017 WL 914027 (E.D. Mich. Mar. 8, 2017) (citing *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) and *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)). Nor does Gaines situate his argument within the bounds of *res judicata* and suggest that Dr. Marshall's findings demonstrated a change in conditions since the prior administrative decision. *Accord Merrill v. Colvin*, No. 2:14-CV-262, 2015 WL 1637435, at *2 (S.D. Ohio Apr. 13, 2015) ("The party seeking to avoid the application of *res judicata* bears the burden of proving changed circumstances."); *Mount v. Colvin*, No. 3:13CV-01016-HBB, 2015 WL 520989, at *4 (W.D. Ky. Feb. 9, 2015) (same). Indeed, the RFC at issue limits Gaines to "simple, routine, and repetitive unskilled tasks . . . free of fast-paced production requirements and with few, if any, workplace changes," as well as no interaction with the general public, occasional interaction with supervisors or coworkers, and "simple, work-related decisions." (Tr. 22). These seem exactly the sort of limitations one might impose upon an individual who encounters social and cognitive difficulties of the sort the ALJ found Gaines credibly proved, and Gaines fails to point to other record evidence that might disavow the Court of this notion. *Cf. Smith v. Comm'r of Soc. Sec.*, No. 3:14-CV-01342, 2015 WL 5729480, at *3 (N.D. Ohio Sept. 28, 2015) ("Smith fails to explain . . . how a more rigorous analysis of the non-treating-source opinions might affect the amount of weight the ALJ assigned to those opinions.").

More importantly, Gaines's argument that the ALJ had to discuss each aspect of Dr. Marshall's opinion is misplaced—SSR 06-03p does not so constrict the writing and reasoning structure to which ALJs must abide, and sanctions an ALJ's discussion of 'other sources' so long as it "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at *6. Indeed, SSR 06-03p is intended to ensure that, on review, one can check to see that the ALJ complied with 20 C.F.R. §§ 404.1527(c) and 416.927(c). *E.g. May v. Astrue*, No. 3:09CV00090, 2009 WL 4716033, at *10 (S.D. Ohio Dec. 9, 2009) ("Without some reasons why the ALJ credited a state agency medical source, there is no way to determine whether the ALJ actually applied the correct legal criteria . . . or whether the ALJ merely accepted the opinion without evaluating it under the factors required by the regulations, . . ."). Even assuming that less-mentioned portions of Dr. Marshall's opinion could have affected the outcome—which, as discussed above, remains a tenuous proposition—the ALJ thoroughly recounted the contents of Dr. Marshall's opinion, alongside the other evidence, and implied that less weight was given to aspects of Dr. Marshall's opinion bearing on non-social limitations because the record as a whole provided less support for those limitations. (Tr. 26) (assigning "significant weight to the opinion of Dr. Marshall regarding [Gaines's] difficulties in social functioning" because Gaines's "complaints regarding anxiety were consistent throughout the medical evidence of record").

In short, there seems little doubt that the ALJ considered the relevant factors in weighing Dr. Marshall's opinion. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543,

551 (6th Cir. 2010) ("[T]he procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. . . . Thus the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. . . . [S]trict compliance with the rule may sometimes be excused." (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006))). Gaines's argument on this count lacks merit.

## 2.     The ALJ Properly Evaluated Gaines's Credibility

Citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007), Gaines warns that "the ALJ's determination must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." (Doc. 15 at ID 633). He notes that ALJs "must consider the seven factors listed in SSR 16-3p and 20 C.F.R. § 416.929," and reminds the Court that "blanket assertions that the Plaintiff is not believable, such as the one used by the ALJ here, are insufficient." (*Id.*). To this, the Commissioner avers that "the ALJ went well beyond . . . form language and provided several detailed reasons for discounting [Gaines's] credibility." (Doc. 18 at ID 652). Moreover, "[t]he ALJ could not have considered [SSR 16-3p] because it did not exist when he issued his decision." (Doc. 18 at ID 653).

The Commissioner's latter assertion is correct: the ALJ in this case was bound to comply with SSR 96-7p because SSR 16-3p had not yet superseded it before he rendered his decision. *Accord Cole v. Comm'r of Soc. Sec.*, No. 15-13292, 2016 WL 3647982, at *11 n.2 (E.D. Mich. June 17, 2016), *report and recommendation adopted*, No. 15-CV-13292, 2016 WL 3626817 (E.D. Mich. July 7, 2016); *Kissling v. Comm'r of Soc. Sec.*, No. 1:15-CV-0807, 2016 WL 4136525, at *7 n.3 (W.D. Mich. Aug. 4, 2016). Even so, SSR 96-7p certainly forbids a routine disposal of any claimant's subjective complaints, devoid of rational discussion. *See* 1996 WL 374186, at *4 (S.S.A. July 2, 1996) ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.").

The ALJ, however, did not reach an adverse credibility determination in an erroneously perfunctory manner. Rather, he provided thoughtful reasons, including patent inconsistencies in Gaines's testimony, for departing from Gaines's complaints in the RFC. The ALJ found Gaines "partially credible" due to the fact that "very few treatment records" existed to corroborate his complaints of disabling pain, and he never sought help from specialists for numerous impairments which ostensibly required more focused treatment than his treating physician could provide. (Tr. 27). Although Gaines attempts to deflect this finding—citing "over 350 pages of medical documentation from July 2013 – February 2015," (Doc. 15 at ID 634)—I cannot divorce the context surrounding the ALJ's language

(which implied that very few treatment records existed *as to Gaines's TMJ and headaches*) from the language itself. (Tr. 27) ("Despite the claimant's allegations of significant symptoms and pain from his impairments, the medical evidence of record contains very few treatment records. The claimant has only treated with his primary physician and has not seen *a neurologist, headache specialist, TMJ specialist, or pain management specialist* regarding his *headaches and jaw pain* that take him to the emergency department on a monthly basis." (emphasis added)). In addition, the ALJ mentioned that Gaines (intentionally or not) misled the consultative psychological examiner in denying drug or alcohol abuse when, in fact, he was under the influence of illicit drugs during the examination. (*Id.*); *see* (Tr. 476) ("No narcotics/controlled substances as [urine drug screen] showed cocaine."). That Gaines's "psychosis and memory problems" may have "led to this misstatement of facts," (Doc. 15 at ID 634), is neither here nor there— the ALJ does not err in refusing to swear blind fealty to a claimant's statements merely because he does not suspect the claimant of lying outright about his symptoms.

In any case, the ALJ still credited a number of Gaines's statements; the RFC— which narrowly limited Gaines's social obligations to occasional interactions with supervisors or coworkers and *no* interactions with the general public, while precluding Gaines from "overhead reaching or lifting with the left upper extremity," (Tr. 22)—reflects this quite clearly. That the ALJ incorporated a number of Gaines's subjective complaints into the RFC shows that he gave them due consideration, alongside other medical evidence, in crafting his analysis.

Gaines ultimately held the burden of proving his RFC, and substantial evidence bolsters the ALJ's determination that he had not adequately proved what he testified to. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("Bearing in mind this rationale behind the shifting of the burden of proof in disability cases, we reject plaintiff's contention that once the burden of proof shifts to the Commissioner at step five, the Commissioner is then required to prove a claimant's Residual Functional Capacity. . . . This determination is usually made at stages one through four, when the claimant is proving the extent of his impairments."). For this reason, his credibility-determination argument lacks merit and should be discarded.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Gaines's Motion for Summary Judgment, (Doc. 15), be **DENIED**, the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some

objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 25, 2017             S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 25, 2017                          By s/Kristen Castaneda
                                         Case Manager